UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY BROWN,<br><br>       Plaintiff,<br><br>    v.<br><br>AUBREY WIMBERLY,<br><br>       Defendant. | Case No.: 1:14-cv-01812 - JLT<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL<br><br>(Doc. 32) |

Plaintiff Danny Brown asserts defendant Aubrey Wimberly is liable for a violation of his civil rights under the First and Fourteenth Amendments. According to Plaintiff, he made statements protected by the Constitution to Wimberly, who then "set in motion a series of events which lead to said termination and revocation of the renewal of Plaintiff's employment contract." (Doc. 1 at 3)

Plaintiff seeks emotional distress damages for his claim, and identified his wife Kathy Brown, and Pastor Bill Lewis as witnesses with information relating to how the termination affected Plaintiff. Defendant now seeks to compel testimony from these witnesses. (Doc. 32) Plaintiff objects on the grounds that the information sought violates the marital privilege and clergy/penitent privilege. (Doc. 38 at 23-25) For the following reasons, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

I.    **Background**

Plaintiff was employed as Director of the Wasco Recreation and Parks Department beginning in

September 2011. (Doc. 1 at 1, ¶ 3) Plaintiff asserts he entered into "a written employment agreement," which indicated his position was for a two-year term. (*Id.*) In April 2013, "Plaintiff was advised by board members that the board of directors of the [WRPD] had voted to extend his contract for another two year term." (*Id.* at 2, ¶ 6)

Plaintiff asserts Defendant Aubrey Wimberly served on the board of directors of the WRPD as well as "the board of directors of the Wasco Youth Little League, an organization involved in sponsoring little league baseball." (Doc. 1 at 2, ¶ 7) According to Plaintiff, Wimberly permitted the League "to have a 'sweetheart' agreement," and used the WRPD facilities free of charge. (*Id.*) Plaintiff alleges that on May 2, 2013, after a joint meeting between the League and the WRPD, he "confronted Defendant about this sweetheart agreement and indicated that Defendant was involved in a conflict of interest serving on the board of both entities." (*Id.*, ¶ 8) Plaintiff asserts that in response, Wimberly said "it was none of Plaintiff's business." (*Id.*)

Plaintiff alleges that on May 16, 2013, he "received a satisfactory evaluation" at a meeting of the board of directors of the WRPD. (Doc. 1 at 2, ¶ 9) After the meeting, Plaintiff again informed Defendant that serving on both boards "was a conflict of interest, especially in light of the sweetheart deal Defendant was allowing the [League] to have in relation to [WRPD] facilities." (*Id.*) Plaintiff asserts he told Wimberley "other groups had inquired about such a sweetheart agreement." (*Id.*) In addition, Plaintiff report he informed Wimberly that the WRPD "was scheduled for an inquiry by a grand jury concerning the operations of the [WRPD] facilities in the near future and this issue would surely arise in said inquiry." (*Id.*)

According to Plaintiff, "On May 28, 2012, Defendant called a special meeting of the board of directors of [WRPD] and during said meeting, Defendant sponsored a motion to rescind the prior two-year extension of Plaintiff and to terminate Plaintiff's employment immediately, however, with pay to occur through the end of Plaintiff's contract." (Doc. 1 at 3, ¶ 10) Plaintiff reports the motion passed, his contract renewal was rescinded, and his employment with the WRPD ended. (*Id.*)

Plaintiff contends his discussion with Wimberly "concerning the conflict of interest of Defendant and the sweetheart agreement… as well as the potential upcoming grand jury investigation involved a matter of public concern and was protected by the 1st and 14th amendments to the United

States Constitution." (Doc. 1 at 3, ¶ 13) He asserts this speech "was a determining factor in the termination of employment and the revocation of his two-year renewal of his employment contract." (*Id.*, ¶ 14) Accordingly, Plaintiff filed a complaint against Wimberly for a violation of his civil rights pursuant to 42 U.S.C. § 1983, seeking economic and punitive damages, as well as damages "[f]or emotional distress and mental anguish." (*Id.* at 3-4, ¶¶15-16)

In his initial disclosures, Plaintiff identified his wife, Kathy Brown, as a witness with "information relating to how Plaintiff's termination affected him emotionally and the damages he sustained." (Doc. 38-1 at 2) He also identified Pastor Bill Lewis as a witness with "information concerning how the termination of employment affected Plaintiff." (*Id.*) Defendant sought to take the depositions of Ms. Brown and Pastor Lewis on April 20, 2016. (*See* Doc. 38-2; Doc. 38-3) However, both depositions were terminated without making a record of the questions to be asked when counsel could not agree on the scope of the marital and clergy privileges, or whether each privilege was waived.

## II.      Motion to Compel Testimony from Ms. Brown

### A.      Legal Standards

Federal Rule of Evidence 501 provides that "[t]he common law – as interpreted by the United States courts in the light of reason and experience – govern a claim of privilege." The Ninth Circuit determined, "The common law recognizes two separate privileges arising out of the marital relationship": (1) "the anti-marital facts privilege" and (2) the "marital communications" privilege. *United States v. Marashi*, 913 F.2d 724, 729 (9th Cir. 1990).

The anti-marital facts privilege permits a witness to refuse to testify against his or her spouse. The privilege applies only "during the length of the marriage." *Marashi*, 913 F.3d at 729. The witness-spouse alone holds the privilege, and may choose to waive it. *Trammel v. United States*, 445 U.S. 40, 53 (1979). The marital communications privilege "bars testimony concerning statements privately communicated between spouses." *Marashi*, 913 F.3d at 729. The privilege may be invoked by either the testifying or non-testifying spouse, even after dissolution of the marriage. *Id.* The marital communications privilege is limited to (1) confidential (2) "words or acts intended as communication to the other spouse," (3) "during the course of a valid marriage." *Id.* citing *Pereira v. United States*, 237 U.S. 1, 6 (1954); *United States v. Lefkowitz*, 618 F.2d 1313, 1318 (9th Cir.), *cert.*

*denied*, 449 U.S. 824 (1980). Thus, the marital communications privilege does not extend to statements "made before, or likely to be overheard by, third parties." *Id.*

B. <u>Discussion and Analysis</u>

The parties disagree upon the application of the martial communications privilege to Mrs. Brown's testimony. Plaintiff contends he is seeking "only … to waive privilege as to discussions related to Plaintiff's assertions to defendant that defendant had a conflict of interest." (Doc. 38 at 23) Further, Plaintiff argues that he will "only use Mrs. Brown's observations concerning emotional distress to substantiate that claim." (*Id.*)

Significantly, counsel agree that a plaintiff may invoke the marital communications privilege, yet the spouse may still offer testimony regarding *observations* without violating the privilege. *See Lefkowitz*, 618 F.2d at 1318 (holding that a wife's observation of boxes of files being moved into offices was not a communicative act protected by the marital privilege); *United States v. Parker*, 834 F.2d 408, 411 (4th Cir. 1987) (holding the privilege "generally, extends only to utterances"); *United States v. Irons*, 646 F. Supp. 2d 927, 957 (E.D. Tenn. 2008) ("the marital communications privilege prevents a spouse from testifying about confidential communications that occurred during the marriage but does not foreclose testimony about the spouse's observations as to the other spouse's actions and appearance"). Consequently, Plaintiff has not waived the marital communications privilege simply by identifying his wife as a witness. However, if Mrs. Brown offers any testimony regarding confidential *discussions* with Plaintiff, the marital communications privilege is implicated.

Defendant contends that "Plaintiff expressly waived marital privilege" by offering the testimony of Mrs. Brown. (Doc. 38 at 20) Defendant observes that "California Evidence Code §973(a) provides, '[A] married person who testifies in a proceeding to which his spouse is a party, or who testifies against his spouse in any proceeding does not have a privilege under this article in the proceeding in which such testimony is given." (*Id.*) In addition, the defendant contends that "[b]y presenting herself to testify, Kathy Brown waived the privilege as to her communications with Plaintiff on emotional distress issues." (*Id.*) Defendant argues Plaintiff and his spouse should not be permitted "to pick and

choose which marital communications are to be preserved."[1] (*Id.* at 21)  The defendant relies on *United States v. Plache*, 913 f.2d 1375, 1379 (9th Cir. 1990) for the proposition that a voluntary waiver of the attorney-client privilege "constitutes a waiver of the privilege on all other communications on the same subject." (Doc. 38 at 20)  Likewise, the defendant cites *IMC Chemicals, Inc. v. Niro Inc.*, 2000 WL 1466495, at *1 (D. Kan. July 19, 2000), for the proposition that a voluntary waiver of the attorney-client privilege results in a waiver as to "communicates related to the disclosed matters."  (Doc. 38 at 20-21)  The defendant cites also *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) in which the court held, "When a party reveals part of a privileged communication in order to gain an advantage in litigation, it waives the privilege as to all other communications relating to the same subject matter . . ."  Finally, the defendant cites *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 280 (N.D. Cal.), rev'd on other grounds, 765 F.Supp.611 (N.D. Cal. 1991), to support the position that once a voluntary waiver occurs as to a subject, it is waived for the entirety of that subject.  The court held,

> MMI has argued that the subject matter scope of its waiver reaches only those specific potential bases for challenging validity or enforceability that are the subjects of communications it already has disclosed (relating primarily to prior art and pre-filing sales activity). We hold that this argument is inconsistent with both the relevant case law and with MMI's own voluntarily made commitments in this case. The law is clear: MMI cannot waive the attorney-client privilege as to certain communications regarding infringement, validity, and enforceability, but not others.

Thus, the defendant doesn't take the position that testimony by Mrs. Brown as to one subject waives the marital privilege on all subjects.  Rather he notes that the disagreement surrounds the scope of the confines of the "subject" as to which the privilege is waived.

Plaintiff contends Mrs. Brown may testify about "discussions related to Plaintiff's assertions to defendant that defendant had a conflict of interest," and that he seeks to waive the privilege for this

---

[1] *But see Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 668 (9th Cir. 2003) ["At least one California court has recognized a party's ability to preserve a privilege through a limited waiver. In *People v. Aguilar*, 218 Cal.App.3d 1556, 267 Cal.Rptr. 879 (1990), overruled in part on other grounds, People v. Ervin, 22 Cal.4th 48, 90, 91 Cal.Rptr.2d 623, 990 P.2d 506 (2000), the California Court of Appeal held that waiver did not occur when a criminal defendant selectively waived the privilege for purposes of a hearing conducted under California Rule of Evidence § 402. *Aguilar*, 218 Cal.App.3d at 1564–65, 267 Cal.Rptr. 879. The trial court in Aguilar erroneously held that the defendant's testimony was admissible only if it met the requirements of California Evidence Code § 795, which sets forth requirements for admissibility of non-defendant witness testimony. *Id*. at 1563, 267 Cal.Rptr. 879. In order to comply with the trial judge's erroneous holding, defense counsel allowed the prosecution to examine privileged communications from the defendant's interviews with a hypnotist for the singular purpose of a hearing to determine whether post-hypnosis evidence should be admissible. Id. at 1565, 267 Cal.Rptr. 879. Defense counsel specifically stated that the waiver was not intended to apply to any aspect of discovery. *Id*. Under these circumstances, the California Court of Appeal held that the privilege was not generally waived. *Id*."]

testimony only. In support of this position, Plaintiff cites several cases in which the courts indicate a waiver may be held to "only specific subjects or discussions." (Doc. 38 at 24, citing *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 24 (9th Cir. 1981); *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 256 (6th Cir. 1996); *Knepp v. United Stone Veneer, LLC*, 2007 U.S. Dist. LEXIS 65423 (M.D. Pa. 2007)). For example, in *Weil*, the Ninth Circuit examined whether the attorney-client privileged was waived when a party "disclose[d] a privileged attorney communication about a matter that is relevant and material to issues in the case, and then invoke the privilege to prevent discovery of other communications about the same matter." *Id.,* 647 F.2d at 24. The Court found the attorney-client privilege was waived, and directed the party to disclose further communications "about the matter actually disclosed." *Id.* Similarly, in *Knepp*, the court indicated that it would "follow the rule for the attorney-client privilege" to determine whether a statement in a pleading constituted a waiver of the marital communications privilege. *Id.*, 2007 U.S. Dist. LEXIS 65423 at *16. In doing so, the court held, "The only remaining question is the extent of the waiver. This disclosure does not waive the privilege with respect to all confidential communications between Robin and David Barrett. Still, we will follow the rule for the attorney-client privilege and find that the privilege has been waived as to all communications on the same subject matter . . ." *Id.* Likewise, *Jones-McNamara v. Holzer Health Sys.*, 2014 WL 4805412, at *3 (S.D. Ohio Sept. 26, 2014) quoted *In re Grand Jury Proceedings,* Oct. 12, 1995, 78 F.3d 251, 256 (6th Cir.1996) when the court held, "[T]he marital communications privilege is similar to the attorney-client privilege, which is also subject to waiver through voluntary disclosure of a privileged communication; but the scope of that waiver is also limited to questions which 'clearly pertain to the subject matter of the specific points on which a waiver did occur.'"

      Plaintiff agrees to waive the marital communications but only as to a single conversation in which he discussed with his wife his concerns about a conflict of interest he believed the defendant had. However, all of the cases cited by the plaintiff and, in fact, all of those cited by the defendant, demonstrate there may be a selective waiver but the waiver, once it occurs, is as to the *entirety* of the subject. Thus, if Mrs. Brown testifies about the conversation with her husband, the marital privilege is waived as to that particular *subject* not simply as to that particular time the subject was discussed.

Because there has not yet been a waiver on any subject, the Court finds the marital communications privilege is intact and has not been waived. Thus, Defendant's motion to compel testimony regarding her communications with Plaintiff is **DENIED**.

On the other hand, the defendant is entitled to explore any relevant subject with Mrs. Brown—based upon her personal observations and about which she would know—as long as they do not seek information that seeks to force her to divulge confidential marital communications not otherwise waived. To this extent the motion is **GRANTED**.

### III.    Motion to Compel Testimony from Pastor Lewis

#### A.    Legal Standards

In *Trammel v. United States*, 445 U.S. 40, 51 (1980), the Court held, "The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." Likewise, the Third Circuit determined

> [A] clergy-communicant privilege does exist. We further hold that this privilege protects communications to a member of the clergy, in his or her spiritual or professional capacity, by persons who seek spiritual counseling and who reasonably expect that their words will be kept in confidence. As is the case with the attorney-client privilege, the presence of third parties, if essential to and in furtherance of the communication, does not vitiate the clergy-communicant privilege. Neither the record nor the district court's findings, however, are sufficient to establish whether any of those present at the counseling session should be considered third parties, to gauge the impact of any third party's presence, and to enable us to ascertain whether the privilege was properly invoked in this case.

*In re Grand Jury Investigation*, 918 F.2d 374, 377 (3rd Cir. 1990). The Court explained "[t]he threshold criterion for deciding whether the privilege should attach" is whether the communication was "made to a clergyperson." *Id.* at 385. However, the privilege does not apply to statements made, even in confidence, to a person who happens to be a member of the clergy but who is receiving the statements outside the purpose of spiritual counseling. *See In re Grand Jury Investigation*, 918 F.2d at 377. The burden is on the person asserting the privilege to establish its applicability, though it may be asserted "by a clergyperson on behalf of a communicant." *Id.*, n. 15.

#### B.    Discussion and Analysis

Pastor Lewis is a clergyman within the meaning of the privilege. Plaintiff argues he is waiving

1  the privilege only as to conversations related to the "emotional distress Plaintiff suffered from his
2  termination," and "a discussion that occurred just prior to his termination about his job (similar to the
3  wife) that involves a prior consistent statement regarding Plaintiff's belief that defendant had engaged
4  in a conflict of interest." (Doc. 38 at 26) However, Defendant contends he should be compelled to
5  answer any questions on "the subject matter of the emotional distress experienced by Brown both as to
6  this incident and as to other prior incidences of employment termination and as to his overall emotional
7  well-being"[2] (*id.* at 2).

8      Rather, only those statements Mr. Brown made to Pastor Lewis while seeking or receiving
9  spiritual counsel are protected. However, based upon the authorities discussed above related to the
10 marital privilege, if Mr. Brown waives the privilege on a subject, he waives it for the entirety of the
11 subject. For example here, Mr. Brown makes clear he intends to waive the privilege only as to the
12 emotional distress he suffered from the loss of the job with WRPD. He does not intend to waive it as to
13 all sources of emotional distress.

14     This does not preclude the defendants from exploring the observations or other information
15 Pastor Lewis has related to other sources of emotional distress for Mr. Brown, as long as they do not
16 seek information that will force him to divulge confidential communications. As with Mrs. Brown, the
17 defendants are entitled to depose Pastor Lewis on all subjects—rather than mere single conversations
18 related to a subject—as to which Mr. Brown waives the privilege.

19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25
26
27 [2] Plaintiff's counsel iterated at the hearing that the plaintiff seeks only "garden variety" emotional distress damages. He stated the plaintiff will not offer pastor Lewis in the professional capacity as a "counselor" and, therefore, Pastor Lewis will be permitted to offer only lay, percipient information about the plaintiff's demeanor and, if appropriate, statements about his distress. Pastor Lewis will not be permitted to offer any opinions about the cause of the emotional or any prognosis or diagnosis.
28

Thus, to the extent the defendant seeks to obtain communications made within the confines of privilege and where there has been no waiver, the motion is **DENIED**[3]. To the extent the defendant seeks information Mr. Brown told Pastor Lewis outside of this counseling relationship or related to Pastor Lewis' observations that do not invade the privilege, the motion is **GRANTED**.

IT IS SO ORDERED.

    Dated:   **June 30, 2016**                **/s/ Jennifer L. Thurston**
                                                      UNITED STATES MAGISTRATE JUDGE

---

[3] The Court is hampered in deciding this motion because counsel did not make a record of the questions he intended to ask. Thus, the Court's order is vague but the Court lacks the ability to make it more specific. The Court anticipates that the defendant will make an adequate record at the depositions and, as necessary, seek further Court intervention. Counsel are encouraged to call the Court from the deposition if issues arise to allow on-the-spot determinations.