UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY BROWN, | Case No.: 1:14-cv-01812 - JLT |
| Plaintiff, | ORDER ON THE MOTIONS IN LIMINE |
| v. | (Docs. 57, 59, 60) |
| AUBREY WIMBERLY, | |
| Defendant. | |

### I. Legal Standards Governing Motions in Limine

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir. 2003) (citations omitted).

Importantly, motions in limine seeking the exclusion of broad categories of evidence are disfavored. See Sperberg v. Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975). The Court "is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007). The Sixth Circuit explained, "[A] better practice is to deal with questions of admissibility of evidence as they arise [in

1 trial]" as opposed to ruling on a motion in limine. Sperberg, 519 F.2d at 712. Nevertheless, motions
2 in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded
3 management of the trial proceedings." Jonasson v. Lutheran Child & Family Services, 115 F.3d 436,
4 440 (7th Cir. 1997).

5  "[A] motion in limine should not be used to resolve factual disputes or weigh evidence," C & E
6 Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008), because that is the province
7 of the jury. See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000).

8  Moreover, the rulings on the motions in limine made here do not preclude either party from
9 raising the admissibility of the evidence discussed here, if the evidence adduced at trial demonstrates a
10 change of circumstances that would make the evidence admissible. In this event, the proponent of the
11 evidence **SHALL** raise the issue outside the presence of the jury. Finally, the rulings made here are
12 binding on all parties and not merely on the moving party.

13 **II.     Defendant's Motions in Limine**

14 **A.     Defendant's Motion in Limine to exclude the testimony of Kathy Brown and Pastor**
15 **William Ray Lewis**

16  The defendant seeks to preclude testimony from Kathy Brown, the plaintiff's wife, and
17 William Ray Lewis, the plaintiff's pastor. (Doc. 57) The defendant argues that because these
18 witnesses asserted privileges at their deposition and refused to answer questions based thereon, they
19 should not be permitted to testify at trial as to matters upon which they refused to answer at their
20 deposition.

21  The Court agrees that neither witness will be permitted to testify as to matters as to which the
22 plaintiff asserted a privilege at their depositions. As to Mrs. Brown, it appears that these topics
23 include: why the plaintiff stopped working for Pinkerton, whether he was fired from the Department of
24 Corrections for the use of excessive force, whether his position as a union rep while working for the
25 Department of Corrections caused him to be in conflict with management, discussions with the
26 plaintiff regarding frustration he may have suffered about finding a job after being fired from the
27 Department of Corrections, how Mrs. Brown learned the City of Wasco eliminated the Economic
28 Development Department, the plaintiff's job duties for the City of Wasco, whether there were any

significant events that occurred at board meetings at the park's district, discussions with the plaintiff about the letters submitted by coworkers, discussions with the plaintiff about videotaping in the girls' locker room, whether Mrs. Brown knows which coworkers submitted letters about the plaintiff, the extent to which the plaintiff denied the content of the letters presented by coworkers was untrue or defamatory, discussions about the plaintiff's search for work after he was fired by the parks district and what the plaintiff discussed with his pastor.

Notably, as previously determined by this Court (Doc. 40 at 4), the marital privilege and the clergy-penitent privilege both concern communications; they do not preclude testimony related to observations. However, as to the topics described above, Mrs. Brown asserted that she could only answer the questions if she relied upon statements from her husband and, therefore, had no observations about which she could testify. Thus, she will not be permitted to testify as to these matters.

On the other hand, the Court has determined previously that Mrs. Brown may testify as to martial communications as to which she and the plaintiff have waived the privilege. However, the defendant contends that Mrs. Brown was not permitted to testify about whether she observed any emotional upset caused by him losing his jobs at the Department of Corrections or the City of Wasco. However, the defendant fails to cite to the deposition transcript where that occurred. Rather, Mrs. Brown testified she didn't recall whether the plaintiff suffered loss of sleep or appetite while looking for work after being fired from the Department of Corrections (Doc. 57-2 at 9). Likewise, Mrs. Brown testified she did not recall that the plaintiff appeared frustrated while looking for work after leaving the City of Wasco. Id. at 12. She indicated that she did not know whether the plaintiff sought counseling after he lost his jobs with the Department of Corrections and the City of Wasco. Id. Though she testified he suffered loss of sleep after losing his job with the Parks District, she reported that he had not done so in the past. Id. at 22. There were no other questions related to the plaintiff's emotional state related to his loss of job at the Department of Corrections or the City of Wasco.

As to Pastor Lewis, he refused to answer questions about the content of counseling he provided

1  to the plaintiff that was unrelated to his firing[1] from the Parks District.  (Doc. 57-3 at 16)  However, he
2  answered questions about counseling sessions he provided to the plaintiff in general.  Id.  In particular,
3  he refused to answer whether the plaintiff felt he was wrongfully terminated from the Department of
4  Corrections, whether that firing was stressful for the plaintiff and, if so, for how long the plaintiff
5  suffered stress or whether it resolved.  However, he clarified that before the events with the defendant,
6  the last time he counseled the plaintiff was when he was fired from the Department of Corrections,
7  years before.  (Doc. 57-3 at 18)
8         Lewis testified that the plaintiff felt angry about having his contract terminated by the Parks
9  District, that he was overwhelmed by the stress of it and that it was causing problems at home due to
10 stress-related arguments with his wife.  (Doc. 57-3 at 14; Doc. 57-3 at 15-16)  He reported also that the
11 termination caused the plaintiff stress because he could not understand how he came to be fired despite
12 that he had "put his all into that job."  Id. at 15. Pastor Lewis reported that the plaintiff still feels
13 mistreated as a result of the termination. Id. at 16.  However, the plaintiff never expressed concerns
14 about having suffered job losses from the two earlier positions.  Id. at 18.  Pastor Lewis reported also
15 that the plaintiff never expressed concerns about not finding work after having been fired the
16 Department of Corrections or from the Parks District or after he lost his job with the City of Wasco.
17 Id.  Pastor Lewis testified that to his knowledge, the plaintiff was suffering no other stress at the time
18 of the events with the defendant other than that caused by the situation with the defendant and his
19 subsequent firing.  (Doc. 57-3 at 17-18)
20        The Court has reviewed the entirety of the testimony from these witnesses and, as a result, the
21 Court disagrees that there is any evidence to support that the plaintiff was suffering emotional distress
22 from any source other than from his interaction with the defendant and his subsequent firing.  The
23 suggestion that he *may have been* suffering from other stressors is speculation.
24        The mere fact that the plaintiff has sought garden variety emotional distress damages does not
25 open up for review every possible stress-causing event no matter how remote.  Indeed, the plaintiff's

---

[1] The Court uses the word "firing" as shorthand and for lack of better phraseology.  In truth, the plaintiff's contract was not renewed but he was also asked not to return to work despite that he had weeks left on his contract.  In using this word, the Court makes no judgment as to the legal effect of what occurred.

firing from the Department of Corrections was eight years before his firing from the Parks District. Unless there was some evidence that the plaintiff was suffering from other stressors—and there is not[2]—the defendant is not entitled to introduce this topic because it provides no probative information and would invite the jury to speculate.

On the other hand, at the hearing on these motions, the attorney for the plaintiff reported that he intends to offer Mrs. Brown's testimony as to the emotional distress topic, only as to her observations and not as to statements the plaintiff may have made to her.  Clearly, this evidence is admissible no matter the scope of the marital privilege asserted.  Likewise, the attorney for the plaintiff reported that he intends to offer the Pastor Lewis' testimony as to his observations and for statements made by the plaintiff during counseling sessions.  Counsel for the defendant noted that this evidence, when offered by the plaintiff, is hearsay because it constitutes his own out of court statements.

The plaintiff argued that Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493 (9th Cir. 2000), supports that Pastor Lewis could offer these statements.  However, though Passantino noted that the plaintiff's claim related to emotional distress was supported by evidence that she sought counseling from her pastor (Id. at 503) and her claims of her emotional distress "were corroborated by . . . her pastor," (Id. at 514), the Ninth Circuit did not address whether and to what extent there was a hearsay objection.  Indeed, there is no indication that the pastor's testimony related any statements made by the plaintiff; rather, it is likely this testimony was limited to observations made by the pastor and the fact that the plaintiff underwent counseling with the pastor.

Notably, Federal Rules of Evidence 801(d)(2) permits testimony of an *opponent's* out of court's statements but it does not condone admission of the party's own out of court statements. However, these statements may be admissible under Federal Rules of Evidence 803.  For example, Rule 803(3) permits these types of statements to demonstrate "the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental

---

[2] To the contrary, both Mrs. Brown and Pastor Lewis denied that he was suffering stress from other sources at the time of the events with the defendant.  Moreover, the defendant chose not to explore this issue with the plaintiff at his own deposition.

feeling, pain, or bodily health) . . ." Thus, clearly, though not everything the plaintiff said to Pastor Lewis may constitute an exception to the hearsay rule, statements that describe his current state of emotional distress, would. However, because the Court does not know exactly how Pastor Lewis will testify, it cannot rule at this time except to say, generally, that the plaintiff's descriptions to Pastor Lewis of what he did or saw or heard would constitute hearsay. However, his statements of how he felt would likely constitute an exception to hearsay. Thus, the Court reserves ruling on the specifics of Pastor Lewis' testimony until it hears the testimony but offers these observations as guidance to counsel.

On the other hand, the plaintiff may offer statements of Mrs. Brown and Pastor Lewis to demonstrate a prior consistent statement by the plaintiff that he was intending to speak to the defendant about his conflict of interest and, more particularly, would offer these statements to contradict the defendant's claim that the statements were not made. Federal Rules of Evidence 801(d) provides,

> A statement that meets the following conditions is not hearsay:
>
> (1) A Declarant-Witness's Prior Statement. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
>
> [¶]
>
> (B) is consistent with the declarant's testimony and is offered:
>
> (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or
>
> (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground; . . .

The defendant testified that he became concerned on his own that he had a conflict of interest given he was the President of the Board of the Parks and Recreation District and the President of the Wasco Little League. (Doc. 64-1 at 45-47) As a result, he decided, after consulting with Danny Espitia[3], to withdraw from the board of the Little League. Id. After this, he spoke to the plaintiff about this and the plaintiff also stated that the defendant could not be on both boards. Id. at 48-49.

---

[3] Apparently, Danny Espitia was a City Council Member and a maintenance employee of the Parks District. (Doc. 62-4 at 24)

1  The defendant denied that the plaintiff ever told him that the defendant had a conflict of interest at any
2  other time.  Id. at 45-46.
3      This is significant because the plaintiff claims that on May 2, 2013, he talked with the
4  defendant and explained that he felt that the defendant had a conflict of interest due to his close
5  association with the Little League and his membership on the Board of Directors of the Parks District.
6  (Doc. 49-1 at 4)  The plaintiff claims that he felt the need to raise this with the defendant because the
7  plaintiff had been approached by a Board Member from the Buttonwillow Parks and Recreation
8  District.  Id. at 3-4. This person reported that the Buttonwillow Little League was asking for the same
9  deal the Wasco Little League received from the Wasco Parks District. Id.  He claims he explained this
10 to the defendant and that he felt it was unfair for the Wasco Little League to get this "sweetheart deal"
11 which, he felt, appeared to be due to the defendant's association with both groups.  Id.  This
12 conversation, if it occurred, is significant in that it provides motive for the defendant to take the
13 wrongful action the plaintiff claims occurred.
14     The plaintiff asserts that he discussed the contact he had with the Buttonwillow Board Member
15 with his wife and Pastor Lewis because he was concerned about having to confront his supervisor
16 about the conflict of interest. (Doc. 49-1 at 4)  Both Mrs. Brown and Pastor Lewis recall the plaintiff
17 expressing these concerns.  Given that the defendant denies that the conversation on May 2, 2013
18 occurred, it appears that the statements offered by Mrs. Brown and pastor Lewis may be offered to
19 rebut the defendant's implicit claim that this conversation never occurred. Fed. R. Evid. 801(d).
20 However, of course, whether the statements of Mrs. Brown and Pastor Lewis can be admitted would
21 depend upon the exact confines of the defendant's trial testimony in this regard.
22     Therefore, while neither Mrs. Brown nor Pastor Lewis will be permitted to testify as to the
23 topics upon which they refuse to testify at their depositions, this does not preclude them from
24 testifying about the topics upon which they were examined or could have been nor does it preclude
25 them, if the appropriate foundation is laid, to testify as to prior consistent statements of the plaintiff.
26 Thus, to this extent, the motion is **GRANTED in PART** and **DENIED in PART**.
27 ///
28 ///

7

**III.    Plaintiff's Motions in Limine**

**A.    Plaintiff's Motion in Limine #1 to exclude the testimony and evidence re: his firing from the Department of Corrections and Motion in Limine # 2 to exclude the testimony and evidence re: his job loss from the City of Wasco**

The plaintiff seeks to exclude the defendant from introducing evidence related to his job performance or his subsequent firing from the Department of Corrections and his job performance and job loss from the City of Wasco. (Docs. 59, 60)  The plaintiff argues that this is mere character evidence and is precluded by Fed. R. Evid. 404(b).  Id.

The defendant argues that he does not intend to introduce this evidence to demonstrate any bad character trait by the plaintiff but to provide "context" for his general damages claim.  (Doc. 61)  The defendant argues evidence of this previous firing and job loss "has a bearing and relationship to" the period of time after his firing from the Parks Department. Id.

Seemingly, the defense is arguing that had the plaintiff not been fired before, it would have been easier for him to obtain another job and, presumably, that his financial losses would have been lessened.  However, the defendant provides no evidence that this earlier firing and job loss had any bearing on the plaintiff's difficulty in obtaining his next job.  The plaintiff testified it took him six months and three weeks to find replacement work.  (Doc. 62-4 at 31) This is a similar amount of time between obtaining his job with the Department of Corrections[4] after leaving the Marine Corps (Doc. 62-4 at 10) and between the time after losing his job with the Department of Corrections and obtaining the job with the City of Wasco. (Doc. 62-4 at 21)  It does not appear that there is any evidence that any prospective employer rejected him for a position due to these previous job losses and the Court has no evidence that a six-month search period was atypical in 2015.

On the other hand, the defendant seeks to be permitted to introduce evidence that there is little hardship to the plaintiff for his travel from Wasco to Arvin for his current job, in light of the fact the plaintiff was willing to drive from Wasco to the prison in Delano for his job in the past.  The Court agrees with the plaintiff that his willingness to drive to Delano for work in the past is irrelevant to this

---

[4] However, he was working for Pinkerton during this interval. Id.

item of damage, assuming the plaintiff limits his damage claim in this regard.  However, if the claim is expanded, for example, to make a claim that this drive impacts his emotional health, his family life or impacts him in some other intangible way, the fact that he was willing to drive for work in the past would be relevant for the jury's consideration.  Thus, the Court reserves ruling on this issue until after it hears the plaintiff's testimony at trial.

In any event, under no circumstances will the Court permit the defense to offer evidence of the circumstances of the plaintiff's firing from the Department of Corrections, the fact of his firing or that he was separated from that entity involuntarily. The Court finds that this event is too remote in time— even if measured from the date of the completion of the appeal from that firing—and the overwhelming prejudice of this evidence far outweighs its minute probative value.  Likewise, the Court finds that this evidence would confuse the jury by suggesting that the earlier firing bears on the circumstances of this case and presentation of this evidence would constitute a waste of time (Doc. 62-4 at 10-21). Fed. R. Evid. 403.

For the same reasons, the Court finds that the fact that the plaintiff's position with the City of Wasco was eliminated and the quality of his performance while on that job have no bearing on whether the plaintiff was treated lawfully by the defendant.  There is no showing that this job elimination from the City of Wasco was due to any failing on the plaintiff's part and no evidence he was suffering emotional distress as a result at the time of the events at issue in this case. Thus, Court sees no probative value to this information.  Consequently, the Court finds that presentation of this evidence would confuse the jury and waste time.  Fed. R. Evid. 403.  Thus, within the parameters noted, the motions are **GRANTED**.

IT IS SO ORDERED.

Dated:   **March 29, 2017**               **/s/ Jennifer L. Thurston**
                                                              UNITED STATES MAGISTRATE JUDGE